### JOHN W. WARREN *vs.* ABRAM FRENCH & another.

If it is within the ordinary course of a partnership business for one partner to borrow money on the credit of the firm, proof that a loan was made to the firm, at their place of business, through one of the partners, at six per cent., upon a statement by the latter that the firm could use the money to advantage at that rate; that the lender took a transfer of bank stock as collateral security; and that he knew that the partner with whom he transacted the business owned real estate in which the firm was not interested, is not sufficient to affect the lender, if he acted in good faith, with constructive notice of fraud in such partner, in procuring the money for his own personal use.

CONTRACT upon a note for $2500, dated September 10th 1855, signed " French, Wells & Co.," and payable to the plaintiff on demand with interest.

At the trial in this court, before *Hoar*, J., the plaintiff testified that the day before the date of the note he was passing in the street in which the firm of French, Wells & Co., consisting of Abram French and John T. Wells, the defendants, and Josiah B. Kilbourn, transacted their business as dealers in crockery ware, and saw Kilbourn standing in the street; that Kilbourn said to him, " What, are you down here to trade ? " to which the plaintiff replied that he was going after Mr. Thompson, and had some money to lend on railroad stock; that Kilbourn asked, at what interest; that he replied that he never took over six per cent; that Kilbourn said, " We can use it to good advantage at that rate in our firm, and can give you as good security as anybody ; " that the plaintiff told him he might have it, to be returned when wanted, if he (the plaintiff) could have good security ; that the next day the plaintiff called at their counting-room, where Kilbourn took the money and gave to him the note, signed by himself, and thirty shares of the stock of the Grocers' Bank, as collateral; that Kilbourn went out to get a certificate of the stock, and returned with it to the counting-room; and that he (the plaintiff) had since surrendered the certificate to the receivers of the Grocers' Bank. In cross-examination, the witness testified that he did not know that he had any conversation with French or Wells; had not lent any of the parties any money before; that his acquaintance with all of the members

of the firm was slight and about equal; that Kilbourn had bought some land at an auction sale at which the plaintiff purchased, that the money was counted out at the desk, and was put by Kilbourn into the desk; that at the time French and Wells were in and out of the counting-room, though no one spoke to him except Kilbourn; that Kilbourn is now dead; that he supposed the shares stood in the name of French, Wells & Co., before the certificate was given to him, but did not know; that he never had any bank stock before this; and that he did not call for payment of the money till after Kilbourn's death.

The defendants then opened their defence, saying that they intended to show that the note was given by Kilbourn in fraud of their rights; that they had no knowledge of the transaction out of which it arose; that no part of the money went to their use; that French, Wells & Co. had no interest in the shares issued to the plaintiff; that Kilbourn was engaged in stock-jobbing transactions, of which this was one; that the money borrowed of the plaintiff was applied to such use, for his own benefit; and that the certificate was not based upon any prior certificate or transfer, but was a fraudulent over-issue of stock by the cashier, for which Kilbourn signed a receipt in his own name. And they contended that Kilbourn in signing the receipt to the bank must be regarded as the agent of the plaintiff; that, under the circumstances in proof and offered to be proved, the whole transaction was out of the ordinary course of the business of the partnership, and not within its scope; that the plaintiff was put upon inquiry, and was bound to know the source and ownership of the stock so issued to him, and that such inquiry would have disclosed the fraud of Kilbourn.

But the judge informed the counsel that he should instruct the jury that if borrowing money on behalf of the firm of French, Wells & Co. was found by them to be within the scope of the ordinary course of the business of the partnership; and the plaintiff lent the money through Kilbourn to the firm in good faith, understanding that he was dealing with the firm, and lending the money at the place of business of the firm, upon an agreement to give him stock as collateral security, in the manner

testified by him, and had no actual knowledge or suspicion of any fraud on the part of Kilbourn, or that the money was not actually borrowed and received by the firm, he would be entitled to recover, although the defendants should prove all which they had offered to prove; and that there was nothing in the facts or circumstances offered in evidence, if the plaintiff acted in good faith, that would affect him with constructive notice of any fraud, or so put him on inquiry as to make him responsible for the fraudulent conduct of Kilbourn.

The defendants declined to go to the jury upon this ruling, and a verdict was taken for the plaintiff. The judge reported the case for the determination of the whole court.

*C. B. Goodrich & W. R. P. Washburn,* for the defendants, cited *O'Kelly* v. *O'Kelly,* 8 Met. 436; *Maclae* v. *Sutherland,* 3 El. & Bl. 1; *Fisher* v. *Tayler,* 2 Hare, 218; *Greenslade* v. *Dower,* 7 B. & C. 635.

*J. D. Ball,* for the plaintiff.

DEWEY, J. The proposed instructions to the jury were in all respects correct. The loan to the copartnership through the agency of Kilbourn, one of the partners, and the receiving of the promissory note of the firm therefor from him, created a legal liability on the part of the defendants, the lender acting in good faith, and believing he was dealing with the firm as borrowers. The case falls within the well settled principles of law as to the liability of copartners. As directly to this point, we may refer to the cases of *Onondaga County Bank* v. *De Puy,* 17 Wend. 47, and *Church* v. *Sparrow,* 5 Wend. 223.

*Judgment on the verdict for the plaintiff.*